IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DAVID EVERETT PLUNK,
    Plaintiff,

V.                                                                     No. _____

CORRECTIONS CORPORATION OF AMERICA,     JURY TRIAL DEMANDED
STEPHEN DOTSON, WARDEN,
RICK PLUNK,
SERGEANT BURNETT, GRIEVANCE CHAIRPERSON,
FREDERICK L. COLE, M.D.,
GERALD STIPANUK, M.D.,
SYLVESTER NICHOL, M.D.,
KEVIN TURNER, M.D.,
ANGIE WHITEHURST, CFNP,
TRACY HICKMAN, CFNP,
VELMA RANDOLPH, LPN,
WANDA HOWARD, LPN,
JULIE CARMON, LPN,
DIANE SULLIVAN, RN,
LORRINE NORWOOD, RN,
KATHIE JACOBS,
JANICE SMITH, RN,
JOHN DOE, Unknown Whiteville Correctional
Facility medical staff,
    Defendants.

COMPLAINT FOR INADEQUATE MEDICAL TREATMENT
IN VIOLATION OF 42 U.S.C. 1983 AND A PENDENT STATE CLAIM
OF MEDICAL MALPRACTICE

    Comes now the Plaintiff, David Everett Plunk, by and through counsel, Stuart B. Breakstone and Leanne A. Thorne, and alleges the following:

    1. This Court has jurisdiction over this cause under 28 U.S.C. Section 1331, as it arises under 42 U.S.C. Section 1983 for redress of violations of the Plaintiff's rights secured by the Eighth and Fourteenth Amendments to the United States Constitution, as well as rights secured

under Article I, Sections Eight, Sixteen, and Thirty-Two of the Tennessee Constitution. This Court has supplemental jurisdiction over the state law claim under 28 U.S.C. Section 1367(a) and under principles of pendent jurisdiction.

2. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391.

3. Corrections Corporation of America ("CCA") is incorporated under the laws of the State of Maryland and has its principal place of business in Nashville, Tennessee. CCA operates the Whiteville Correctional Facility, a prison located in Whiteville, Hardeman County, Tennessee. CCA and its employees and agents are acting under color of state law in all of their activities with respect to the incarceration of prisoners at WCFA.

4. The Plaintiff, David Everett Plunk, was a resident inmate at WCFA from February 2, 2005, until May 15, 2006.

5. At all relevant times Defendant Stephen Dotson was employed as Warden at WCFA. He is an agent and employee of CCA.

6. At all relevant times Defendant Stephen Dotson was directly responsible for the management and supervision of WCFA.

7. At all relevant times Defendant Sergeant Burnett was employed as the Grievance Chairperson at WCFA. She is an agent and employee of CCA.

8. At all relevant times Defendant Rick Plunk supervised Defendant Sergeant Burnett. He is an agent and employee of CCA.

9. At all relevant times Defendant physicians Frederick L. Cole, Gerald Stipanuk, Sylvester Nichol, and Kevin Turner were agents and employees of CCA. In the alternative, the Defendant physicians functioned as independent contractors.

10. At all relevant times Defendants Frederick L. Cole, Gerald Stipanuk, Sylvester

Nichol, and Kevin Turner were directly responsible for addressing and attending to the medical needs of resident inmates at WCFA.

11. At all relevant times Defendant nurse practitioners Angie Whitehurst and Tracy Hickman were agents and employees of CCA. In the alternative, the Defendant nurse practitioners functioned as independent contractors.

12. At all relevant times Defendants Angie Whitehurst and Tracy Hickman were responsible for addressing and attending to the medical needs of resident inmates at WCFA.

13. At all relevant times Defendant nurses Velma Randolph, Wanda Howard, Julie Carmon, Diane Sullivan, Lorrine Norwood, Kathie Jacobs, and Janice Smith were agents and employees of CCA. In the alternative, the Defendant nurses functioned as independent contractors.

14. At all relevant times Defendants Velma Randolph, Wanda Howard, Julie Carmon, Diane Sullivan, Lorrine Norwood, Kathie Jacobs, and Janice Smith were responsible for addressing and attending to the medical needs of resident inmates at WCFA.

15. At all relevant times John Doe Defendants were agents and employees of CCA. In the alternative, the Defendant medical staff functioned as independent contractors.

FACTS

16. In 2001, while in the custody of the Tennessee Department of Correction ("TDOC"), specifically the Northwest Correctional Facility ("NWCX") and Deberry Special Needs Facility ("DSNF"), the Plaintiff, David Everett Plunk, was diagnosed with proliferative T-cell Lymphoma, which was treated appropriately and went into remission. The Lymphoma was directly connected to Plaintiff's military service in Vietnam by the Veteran's Administration in 2003.

17. In January 2005, NWCX referred the Plaintiff to DSNF, where he was noted to have a firm enlarged right axillary lymph node measuring approximately two centimeters, and an

enlarged left breast with no discrete mass. At that time, the Plaintiff was recommended for a subcutaneous mastectomy of the left breast and a biopsy of the right axillary lymph node, to be performed concurrently. It was noted that these recommendations should be followed "as soon as possible to make the diagnosis in a timely fashion." This course was approved and scheduled by NWCX for February 15, 2005.

18. On February 2, 2005, before the scheduled appointment, the Plaintiff was transferred from NWCX to WCFA. A form titled "Health Status/Transfer Summary" notified WFCA that the Plaintiff had an "appt[.] SPND Non-Hodgkis lymphona [sic]." This document was signed for as received by a John Doe defendant on February 2, 2005. Despite this knowledge, WCFA failed to transport the Plaintiff for the mastectomy and biopsy or reschedule the procedures promptly.

19. On April 1, 2005, WCFA physician Frederick L. Cole examined the Plaintiff and requested authorization for a CT scan of the Plaintiff's abdomen, but in no way addressed the mass in the right axillary lymph node or his enlarged left breast, despite the fact that Plaintiff had a well-documented history of Lymphoma.

20. On August 17, 2005, the Plaintiff filed a grievance requesting the previously scheduled surgeries; WCFA's Grievance Chairperson, Sergeant Burnett, replied in a form response that the grievance was unable to be processed because it lacked specific details; was not filed within seven (7) days of the occurrence giving rise to the grievance; and because the requested solution was inappropriate as it pertained, in part, to classification or placement.

21. The Plaintiff filed a second grievance on or about September 22, 2005, in which he again requested the biopsy. In response, Rick Plunk acknowledged that the Plaintiff was recommended for a biopsy on January 24, 2005, and was received at WCFA on February 2, 2005. He further noted that, after arriving at WFCA, the Plaintiff was seen by a nurse practitioner, placed

on the chronic clinic list, and seen by a physician on April 1, 2005. He stated that a CT scan was performed on May 19, 2005, after which the physician explained the results and recommendations, which included the fact that there was no need for surgery and no evidence of cancer.

22. Sergeant Burnett reviewed the Rick Plunk's response and concurred in it. Warden Stephen Dotson reviewed Sergeant Burnett's proposed response and concurred in it.

23. On April 7, 2006, fourteen months after it was originally scheduled, a biopsy was finally performed on Plaintiff's right axillary lymph node, which yielded results consistent with angioimmunoblastic T-cell lymphoma. On or about May 15, 2006, the Plaintiff was transferred from WCFA to DSNF to begin "salvage chemotherapy" for his recurrent cancer.

24. The delay in diagnosis and treatment caused by the Defendants' deliberate indifference lessened the probability that treatment would be as successful as it had been previously, and decreased the Plaintiff's life expectancy and quality of life.

1. Deliberate Indifference

25. The Plaintiff realleges paragraphs one through twenty-four of this complaint.

26. Defendants have, under color of state law, deprived the Plaintiff of rights, privileges and immunities secured by the Eighth and Fourteenth Amendments to the United States Constitution including, but not limited to, the right to be free of deprivations of liberty without due process, the right to equal protection under the law, and the right to be free of cruel and unusual punishment.

27. CCA, and their agents and employees at WCFA have breached their duty to hold the Plaintiff free from known risks of harm to him. The policies and procedures implemented by officers of said corporation and executed by agents and employees of said corporation resulted in a breach of duty owed by said Defendants to the Plaintiff while in the Defendant's custody.

28. CCA, and their agents and employees at WCFA were deliberately indifferent to the Plaintiff's need for expeditious and appropriate diagnostic testing of two areas of concern, which presented the possibility of recurrence of Non-Hodgkin's Lymphoma, a condition well-documented in the Plaintiff's medical records. Specifically, the Defendants failed to transport the Plaintiff to his original appointment for a mastectomy of the left breast and biopsy of the right axillary lymph node, or promptly reschedule the appointment. Further, the medical staff at WCFA ordered a CT scan of Plaintiff's abdomen, a region separate and apart from those of concern. This test, even if it had been performed on the appropriate regions, could not discern malignancy, and therefore would have been unable to diagnose a recurrence of Non-Hodgkin's Lymphoma.

29. The administration of a CT scan of the abdomen under the circumstances as they existed demonstrates a failure to review the Plaintiff's medical records, as well as a lack of any reasoned assessment or evaluation of the Plaintiff's condition. Further, the administration of said test was not medically reasonable, and constituted reckless and deliberate indifference on the part of all Defendant medical providers.

30. Although the seriousness of the Plaintiff's condition was not obvious at the time of his transfer to WCFA, it is evidenced by the detrimental effect of the delay of the diagnostic testing and treatment. Indeed, when the Plaintiff ultimately received the biopsy of the right axillary lymph node, fourteen months after it was initially scheduled, it resulted in a diagnosis of recurrent T-cell lymphoma. The delay in diagnosis and treatment occasioned by the Defendant medical providers' indifference necessarily lessened the probability that treatment would be as successful as it had been in the past, resulting in a loss of chance, and decreased the Plaintiff's life expectancy and quality of life.

31. The Defendants had actual knowledge of the scheduled biopsy and the possibility of recurrence of Lymphoma, as shown by the receipt of the Plaintiff's Transfer Summary on February 2, 2005, by a John Doe defendant, an employee and agent of WCFA. Further, in response to the Plaintiff's grievance filed in September 2005, Rick Plunk acknowledged that the Plaintiff was recommended for a biopsy of the right axillary node prior to his transfer to WCFA. He further noted that the Plaintiff was instead administered a CT scan and told that there was no sign of cancer and no need for surgery. Both the Grievance Chairperson, Sergeant Burnett, and Warden Stephen Dotson concurred in this opinion, thereby authorizing and acquiescing in the denial of necessary testing. The aforementioned constitutes deliberate indifference on the part of all of these Defendants.

32. The Defendants' failure and refusal to render medical care to the Plaintiff was a breach of their duty to provide adequate medical care to the Plaintiff and demonstrated a deliberate indifference to the Plaintiff's civil rights and was, therefore, a violation of the Plaintiff's rights under the United States Constitution and is actionable under 42 U.S.C. Section 1983. Defendants also violated Plaintiff's rights secured by the Constitution of the State of Tennessee under Article I, Sections Eight, Sixteen, and Thirty-Two by failing to treat the Plaintiff in a humane manner.

33. As a result of the Defendants' actions and deliberate indifference, the Plaintiff has a decreased life expectancy, and has suffered and continues to suffer intolerable pain.

34. In addition to the physical pain and suffering, the Plaintiff has suffered and continues to suffer from severe emotional distress due to his prognosis. Furthermore, the Defendants' actions are so outrageous as to shock the conscience and are not tolerated in a civilized society. Said actions were intentionally, maliciously, and recklessly oppressive, and displayed complete indifference to the rights and well-being of the Plaintiff such that said actions are punitive in nature and also

constitute a violation of the laws of the State of Tennessee and the United States Constitution.

### 2. Medical Malpractice

35. Plaintiff realleges paragraphs one through thirty-four of this complaint.

36. Each Defendant medical provider owed the Plaintiff a duty to act in accordance with acceptable professional practice in the same or similar communities.

37. This duty was breached by the Defendant medical providers by their failure to review Plaintiff's medical records and make a reasoned assessment and evaluation of his condition.

38. Each Defendant medical provider further breached the duty of care by failing to ensure that the Plaintiff received the scheduled left breast mastectomy and biopsy of the right axillary lymph node in February 2005, or promptly thereafter, as the Plaintiff had a history of Non-Hodgkin's Lymphoma and presented with an enlarged left breast and a firm two centimeter mass in his right axillary lymph node.

39. The WCFA medical providers also breached the duty of care by ordering a CT scan of the Plaintiffs abdomen, a test that would not determine malignancy, in a region that was not a noted area of concern. Given the Plaintiff's symptoms, this test was not medically reasonable. The Defendant medical providers did nothing to address the Plaintiff's right axillary lymph node until April 2006, fourteen months after the biopsy was initially scheduled.

40. Due to the Defendant medical providers' breaches, the Plaintiff's diagnosis was delayed, thereby resulting in a loss of chance, and lessening his life expectancy and quality of life.

41. That the aforementioned breaches were a proximate cause of the Plaintiff's injuries.

WHEREFORE, The Plaintiff prays as follows:

a.  For a jury to try the issues when joined.

b. For the entry of judgment against Defendants for compensatory and special damages in an amount proven at trial including but not limited to damages for pain, suffering, mental and emotional distress;

c. For an award of punitive damages;

d. For costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. Section 1983;

e. For an order declaring that the Defendants have acted in violation of the United States Constitution and the Constitution of the State of Tennessee;

f. For an order enjoining the Defendants from engaging in any of the unlawful act: omissions, or practices complained of herein.

g. For an order declaring that the Defendant medical providers have committed medical malpractice.

h. For such other and further relief as the Court deems proper.

Respectfully Submitted,

s/ Stuart B. Breakstone
(by telephone consent on 3/20/07)
Stuart B. Breakstone, BPR#014761
Breakstone & Associates
6477 Cottingham Place
Memphis, TN 38120
(901) 522-0052
stuart@breakstonelawoffice.com

s/ Leanne A. Thorne
Leanne A. Thorne, BPR#023481
P.O. Box 262
Lexington, TN 38351
(731) 968-9810
thornelaw@hotmail.com